OPINION OF THE COURT
Edward F. McLaughlin, J.
The petitioners moved at Special Term for judicial review under CPLR article 78 of certain determinations of the New York State Urban Development Corp. (U.D.C.), the Onondaga County Planning Board, and the City of Syracuse Planning *793 Commission, which held that the proposed domed stadium to be constructed on the same site as the old Archbold Stadium at Syracuse University was an excluded action under ECL articles 8 and 19 and 6 NYCRR Part 617, and thus did not require preparation of an environmental impact statement.
BACKGROUND
On September 27, 1978 an act (L 1978, ch 776) was passed which amended the New York State Urban Development Corporation Act (L 1968, ch 174) by authorizing, among other things, $15,000,000 for use as a supplement to funds of Syracuse University for construction of a domed athletic facility and for demolition of Archbold Stadium. Funding was subject to approval by the Director of the Budget, which approval was further subject to entering into an agreement with Syracuse University which would provide, among other things, that the New York State Office of Parks and Recreation would provide, among other things, that the New York State Office of Parks and Recreation would have the facility available for a specified period of time not to exceed 20 days per year on terms set by the said Office of Parks and Recreation. On October 5, 1978 the U.D.C. approved Syracuse University’s application for funding of the project and thereafter the other respondent agencies approved the project. These determinations are the subject of this judicial review in which petitioners seek to reverse and annul the determinations of the respondent agencies, to compel preparation of an environmental impact statement, and to enjoin U.D.C. from expending or advancing any funds upon the proposed domed stadium project until ECL articles 8 and 19, its rules and regulations, sections 239-1 and 239-m of the General Municipal Law, and the City of Syracuse zoning ordinances have been complied with.
ISSUE OF TRANSFER TO APPELLATE DIVISION
In the petition it is stated by petitioners that they believe that this matter should be referred to the Appellate Division pursuant to CPLR 7803 (subd 4) and 7804 (subd [g]) for consideration of the issue as to whether the determinations of the respondents were supported by substantial evidence. This is denied since there is no basis in this record to show that the determinations of the respondents were made as the result of a hearing at which evidence was taken pursuant to a direction of law. (See Siegel, New York Practice, *794 § 560; Lewis, The Transfer of Article 78 Proceedings, NYLJ, Jan. 19, 1979, p 1, col 2.)
BASIC ISSUES
The basic questions to be determined by the court in relation to the first five causes of action set forth in the petition are whether the determinations of the U.D.C. were arbitrary, capricious, erroneous in law or an abuse of discretion in concluding that:
(1) The domed stadium project is an excluded action under the provisions of ECL article 8 (State Environmental Quality Review Act) (SEQRA) as a non-Type I action (21 NYCRR 4200.4 [1]) and as an action "approved or in approvable form” prior to November 1, 1978, and
(2) A negative declaration of environmental impact, or a so-called "Determination of Non-Significance”, be issued for the stadium project.
DETERMINATION BY U.D.C.
Pursuant to the directive of ECL 8-0113 (subd 3), the U.D.C. adopted regulations effective June 27, 1977 implementing the impact study requirements óf the act. These regulations are contained in 21 NYCRR Part 4200. The regulations, modeled after those of the Department of Environmental Conservation (6 NYCRR Part 617), were promulgated to honor the intention of SEQRA that environmental factors be considered together with social and economic considerations in reaching decisions on proposed activities. (21 NYCRR 4200.1.)
The regulations provide that U.D.C. may request and an applicant shall provide such data, information or assistance as U.D.C. determines necessary for full compliance with this part. (21 NYCRR 4200.5 [a].) The regulations also provide that as early as possible in an agency’s formulation of an action it proposes to undertake, or as soon as an agency receives an application for a funding or approval action, it shall determine whether the action is subject to SEQRA. If the action is an exempt, an excluded or a Type II action (21 NYCRR 4200.4 [h] [11]), the agency shall have no further responsibility under this part. (21 NYCRR 4200.5 [c].)
21 NYCRR 4200.4 (1) provides a list of actions that the commissioner and the U.D.C. have determined to be likely to have a significant impact on the environment and to be *795 subject to environmental reivew requirements of SEQRA and 21 NYCRR Part 4200. The inclusion of an action in the Type I list does not mean that it is an action that automatically requires the preparation of an environmental impact statement, nor does the omission of an action mean that it is an action that is automatically exempted from environmental review. The list of Type I actions under 21 NYCRR 4200.4, which is still effective, closely corresponds to that found in the Department of Environmental Conservation regulations (6 NYCRR 617.15), which was effective prior to November 1, 1978. Section 4200.5 of the U.D.C. regulations (21 NYCRR 4200.5) provides that if the U.D.C. determines that a proposed action is not an exempt action, it shall as early as possible in the formulation and design of the direct funding or leasing action to be carried out or undertaken by U.D.C., conduct an environmental analysis of the proposed action to determine whether the action may or will have a significant effect on the environment. In conducting the environmental analysis, the U.D.C. shall consider the list of Type I actions set forth in 21 NYCRR 4200.4 and shall apply certain criteria in making a determination of significant effect. 21 NYCRR 4200.5 (d) sets forth 10 such criteria. Clearly, then, if an action of any type will not cause a significant effect on the environment under one of these criteria, it is not subject to the environmental impact statement requirements.
In reviewing the criteria set forth in 21 NYCRR 4200.5 (d), the only criteria which could reasonably apply are found in paragraphs (1), (4), (5) and (8). Respectively, these criteria and their given examples are: substantial adverse change to ambient water or air quality or noise levels or in solid waste production, drainage, erosion or flooding (example: reactivation of heavy manufacturing plant); creation of a material conflict with the community’s existing plans or goals as officially approved or adopted (example: construction of a jail in an area zoned by a local municipality for single family residential use); impairment of the character or quality of important historical, archeological, architectural or aesthetic resources or existing community or neighborhood character (example: demolition of a historic landmark listed in the State-wide Inventory of Historical and Cultural Resources); substantial change in the use, or intensity of use, of land or other natural resources or their capacity to support existing uses (example: construction of an airport). 21 NYCRR 4200.5 *796 (e) provides that for the purpose of determining whether an action will cause one of the foregoing consequences, the action shall be deemed to include other contemporaneous or subsequent actions which are included in any long range comprehensive integrated plan for which the action under consideration is a part, or which are likely to be taken as a result thereof or which are dependent thereon. The significance of a likely consequence (i.e., whether it is material, substantial, large, important, etc.) should be assessed in connection with its setting (i.e., urban or rural), its probability of occurring, its duration, its irreversibility, its controlability, its geographic scope, and its magnitude (i.e., degree of change or its absolute size). The criteria listed above, which petitioners contend apply to the stadium project and dictate a finding of significance of effect on the environment, will be treated and considered below.
The U.D.C. determined that the stadium project was a non-Type I action, approved prior to November 1, 1978, and that as such was excluded from the requirements of SEQRA pursuant to ECL 8-0117 (subd 4). Chapter VI of 6 NYCRR Part 617 adopted pursuant to ECL 8-0113 sets forth a list of actions that are most likely to require the preparation of an environmental impact statement. As mentioned above, such actions are designated as Type I actions and are listed in 6 NYCRR 617.15, which was effective prior to November 1, 1978, and in 21 NYCRR 4200.4.
Petitioner contends that, should these regulations be deemed effective, the stadium project is a type I action under former 6 NYCRR 617.15 ([e] Type I, subd [a], par [2], subd [b], par [8], subds [d], [j]). Paragraph (2) of subdivision (a) of Type I is inapplicable in that the proposed facility is not a hospital, school, institution of higher learning, correctional facility or major office center, but is merely one part of or structure within the university; that is, a sports stadium. Paragraph (1) of subdivision (b) of Type I is inapplicable in that there are no plans for construction of parking facilities. Paragraph (8) of subdivision (b) of Type I would apply only if the stadium generated more than 5,000 vehicle trips per hour or more than 25,000 vehicle trips per eight-hour period. The record before the U.D.C. demonstrated that such vehicle trip criteria would not be met and the court will not disturb such a finding.
With respect to section 617.15 ([e] Type I, subds [d], [j]), *797 there is no evidence before the court that the facility would have an adverse impact on any historic buildings in the vicinity, or that the stadium would result in excessive or unusual noise'or vibration.
Petitioners’ conclusory allegations are insufficient. Accordingly, it cannot be said that the U.D.C. acted in an arbitrary or capricious manner in determining that the stadium project was not a Type I action under the Department of Environmental Conservation regulations (former 6 NYCRR 617.12), and the U.D.C. regulations (21 NYCRR 4200.4).
Petitioners contend, however, that the applicable regulations as to Type I actions are set forth in 6 NYCRR 617.12, effective November 1, 1978. Petitioners cite 6 NYCRR 617.12 ([b] [6] [i], [iii], [v] and [9]) as guidelines which would make the project a Type I action under the new regulations. Section 617.12 ([b] [6] [i], [iii]) are inapplicable because the project plans do not provide for the construction of new parking facilities or for the physical alteration of 10 acres. Section 617.12 ([b] [9]) is inapplicable in that Crouse College, a listed historic place, is not contiguous to the proposed stadium. With respect to section 617.12 ([b] [6] [v]) it is conceded by respondents that the project will involve an expansion of the existing stadium by more than 50% of 240,000 square feet of gross floor area. However, considering the fact that the proposed project would occupy a smaller gross area than the old stadium and that the environmental concerns raised by petitioners would result from seating capacity rather than gross floor area, this regulation in itself appears insufficient to warrant a Type I designation. In any event, the court is of the opinion the U.D.C. correctly utilized 6 NYCRR 617.12, the regulation effective prior to November 1, 1978, and its U.D.C. counterpart, 21 NYCRR 4200.4, in making its determination that the project is a non-Type I action. Moreover, as will be discussed below, the U.D.C. made an alternative determination of non-significance, which obviates the need for an environmental impact statement even where a Type I action is involved. (See 6 NYCRR 617.10 [b].)
Having reviewed the regulations as set forth above, the court finds that the determination of the U.D.C. that the stadium project is not a Type I action was not arbitrary, capricious, contrary to law or an abuse of discretion.
By certification pursuant to 6 NYCRR 617.12 (8), effective prior to November 1, 1978, the U.D.C. determined that the *798 application for funding for the project was approved or in approvable form prior to November 1, 1978 and hence was an excluded action under SEQRA. The enabling legislation for the project was signed on September 28, 1978 and thfe undertaking of funding action for the project was approved by U.D.C. on October 5, 1978. Therefore, it is evident that the project was approved or in approvable form prior to November 1, 1978, and that the exclusion of this action pursuant to 6 NYCRR 617.12 (8) was thus not arbitrary or capricious.
In sum, the court finds that the record before the U.D.C. provided a rational basis for its determination that the project was excluded as a non-Type I action and as an action approved or in approvable form prior to November 1, 1978. As an excluded action, the project was not subject to SEQRA’s requirement of an environmental impact statement and the court so finds.
Having determined that the project was a non-Type I excluded action, the U.D.C. further found, in the alternative, that the project would not have a significant effect on the environment. Petitioner contends that the U.D.C.’s determination of nonsignificance dated December 1, 1978 was made without a rational basis. 6 NYCRR 617.12 (a), the current regulation properly applicable to a declaration of nonsignificance, identifies for agencies, project sponsors and the public those actions and projects that are more likely to require preparation of an environmental impact statement than those not so listed. As the lead agency, it was up to the U.D.C. to determine whether an environmental impact statement would be required. (6 NYCRR 617.2 [q], 617.6 [d] [2], 617.8 [a].) In its determination of nonsignificance, the U.D.C. stated that "[A]l-though the project could have a significant effect on the environment, there will not be a significant effect in this case because mitigation measures are being undertaken with respect to, and will be included in the proposed project”. Hence, the U.D.C. considered the criteria of "significant effect” 21 NYCRR 4200.5 as discussed above, which consideration is presumed by law. The document went on to identify responsible authorities and measures which were to be undertaken by them in mitigation of any significant effect on the environment — measures upon which a determination of nonsignificance may properly be based. (Running Fence Corp. v Superior Ct. of Cal., County of Sonoma, 51 Cal App 3d 400; see 6 NYCRR 617.11 [c] [2], 617.19 determination [B] of form, part *799 II, p 260.12J10.) Since a determination of nonsignificance was made, a preparation of an environmental impact statement is not required.
The regulations do not support petitioners’ contention that an environmental impact statement must be prepared before a determination can be made as to whether a proposed project could possibly have a significant effect on the environment. (See Paciñc Water Condition Assn. v City Council of City of Riverside, 73 Cal App 3d 546.) Additionally, the Environmental Assessment Form which the university had provided and which was before the U.D.C. provides specifically for a negative declaration for a project that "could have a significant effect on the environment * * * [but will not have] a significant effect in this case because [of] the mitigation measures”. (6 NYCRR 617.19 determination [B] of form, part II, p 260.12jl0.)
Thus, U.D.C.’s determination of nonsignificance based upon mitigation measures to be included as part of the project conformed to the requirements of SEQRA. To render the negative declaration defective, the evidence must demonstrate that mitigation measures provided for by the applicants would not, as a matter of law, mitigate the environmental impact. (Running Fence Corp. v Superior Ct. of Cal., County of Sonoma, supra, pp 430-431.) There is no evidence that these measures will not be sufficient to ameliorate potential environmental impacts. Although petitioners allege that the mitigation measures are presently "vague and ill defined”, the U.D.C. found them to be acceptable and the court does not view the U.D.C.’s decision as irrational.
Petitioners have asserted that U.D.C.’s determination to allow project funding and apply for same to the Director of the Budget is arbitrary and capricious, an abuse of discretion and in violation of the laws and rules of the State of New York, the Federal laws, the State and Federal Constitutions, ECL article 19, 6 NYCRR Part 203, and chapter 252 of the Laws of 1977.
Petitioners’ conclusory allegations are not sufficient to sustain their burden of proof on this issue. There is no basis for the court to hold that the determination of U.D.C. was arbitrary, cparicious, an error of law or an abuse of discretion. In fact, the court having held that the U.D.C. had a rational basis for its determination that the stadium project was excluded from SEQRA renders this issue academic. The appli *800 cability of ECL article 19 and the rules are more fully discussed below.
The petitioners have asserted that pursuant to ECL article 19 and 6 NYCRR Part 203, an air quality permit is required prior to construction of this facility, and that no determination upon the aforesaid rules and regulations can be made prior to preparation of a parking and traffic plan and an environmental impact statement.
The authority to enforce ECL article 19 and the departmental regulations rests solely with the State of New York (the Commissioner of Environmental Conservation) and not individual citizens. (ECL 19-0305, subd 1.)
Moreover, the subject of this proceeding at this posture relates to the construction of a domed stadium, not a parking facility or other indirect source for an associated parking area or modification of same as set forth in 6 NYCRR 203.3 (a) (c) (i), (ii). The court holds that the petitioners have failed to sustain their burden of proof that approval by the Commissioner of Environmental Conservation is required under the aforesaid ECL article 19 for the construction of the domed stadium.
DETERMINATION BY ONONDAGA COUNTY PLANNING BOARD
Petitioners’ allegations against the respondent Onondaga County Planning Board cannot be sustained. It is undisputed that the matter of the domed stadium was referred to aforesaid planning board pursuant to sections 239-1 and 239-m of the General Municipal Law for its recommendation. This board is empowered by section 239-m of the General Municipal Law to offer only a recommendation which is not binding nor final in that it can be overridden by a vote of a majority plus one of the City Planning Commission. (See General Municipal Law, § 239-m.) Such a determination, which is advisory only and not final, cannot be reviewed in a CPLR article 78 proceeding. (Matter of Baker-Firestone v Bowman, 43 AD2d 738; see, also, CPLR 7801, subd 1.) Therefore, this cause of action against Onondaga County Planning Board must be and hereby is dismissed.
DETERMINATION BY CITY OF SYRACUSE PLANNING COMMISSION
Petitioners in their motion against the City of Syracuse *801 Planning Commission allege that the action of the Planning Commission approving the domed stadium project on December 5, 1978 under part B of section VIII of article 1 of the Syracuse Zoning Rules was void inasmuch as the Commissioner of Planning was required to give such approval. The Charter of the City of Syracuse, effective January 1, 1962 in chapter 13 of article V placed the duties and power of zoning upon a Department of Planning headed by a Commissioner of Planning with an advisory City Planning Commission. This chapter was subsequently amended by Local Law No. 7 adopted by the Common Council on April 1, 1968, effective upon filing with the New York Secretary of State May 2, 1968. This amendment abolished the position of the Director of Planning and conferred the powers and responsibilities upon a Planning Commission which since that date has assumed all responsibilities in the field of planning and zoning as set forth in the Charter of the City of Syracuse and the zoning ordinances as amended. Therefore, as a matter of law the court holds that the City Planning Commission is the proper and authoritative body to pass on the issues in this case before the court.
Petitioners also contend that the City Planning Commission improperly relied on the determination of the U.D.C., that a complete application was not submitted under the provisions of the zoning law, and that section 293-1 of the General Municipal Law was not complied with by this commission.
A review of the record in this case clearly shows that there was before this commission adequate documents and material on which the commission could base a rational decision. The record further discloses that the City Planning Commission had the benefit of the information before the lead agency, U.D.C., as well as the recommendation of the Onondaga County Planning Board, but more importantly that the City Planning Commission had sufficient material before it to warrant approval of the Syracuse University domed project.
The City of Syracuse Zoning Rules and Regulations and map were amended in 1969 to place the main university campus, including the Archbold Stadium, in a planned institutional district. This showed the existing facilities including Archbold Stadium, which lies within subdistrict number 3 identified "academic” and "related student and faculty services”. Before a building permit can be issued for a project within the planned institutional district, the Planning Com *802 mission must find that the project plan is in substantial conformity with the district plan. If there is a negative finding, it may amend the district plan upon finding that the amendment would not violate the intent of the planned institutional district including adequate provision for fire and police access, drainage and utilities.
Moreover, the Planning Commission is empowered to waive any development requirements not exceeding 50% of lot coverage, floor area ratio or setback, if such a waiver is not a detriment to adjacent properties or does not jeopardize the intent of the planned institutional district.
The Planning Commission reviewed the project plan for the purpose of making a determination as to whether the plan was in conformity with the approved district plan number 3. On November 5, 1978 the commission in a resolution concluded that the subject proposal is in keeping with the district and subdistrict plan which was approved by the commission on February 4, 1969 and by the Common Council on February 17, 1969. After reviewing the numerous plans and materials submitted, as required by the zoning ordinance, the Planning Commission also found that the proposal on the project met all of the geometric requirements of the planned institutional district with the exception of an increase in lot coverage from 35% to 38%, which increase it waived under the provisions of the zoning law. The Planning Commission also indicated that the existing stadium was in fact part of subdistrict 3 under the category "related student and faculty services” as shown on the district plan number 3, approved in 1969, and that the proposed domed stadium was a land use consistent with the subdistrict plan number 3.
It would appear from the record that the determination of the City Planning Commission was rational and based on adequate material before it and was not illegal, arbitrary, capricious or an abuse of discretion, which elements constitute the limitation of judicial review in a proceeding of this type. The court cannot disturb the determination of the commission unless the petitioners have clearly demonstrated that the determination was arbitrary and capricious, an abuse of discretion or contrary to law. On this issue the court concludes that the petitioners have not sustained the burden of proof required to void the determination of the City Planning Commission.
*803 PRESUMPTIONS
In the absence of proof to the contrary, there is a very strong presumption that public officers have properly discharged the duties of their office for the purpose of sustaining official acts of public officers. The law in the absence of any circumstances or proof indicating the contrary, presumes not only that such public officers performed the duties of their office but that acts within the sphere of their official duty were done regularly, legally and reasonably, with honesty and good conscience in accordance with law.
A court must presume until the contrary is shown that public officers vested with discretionary power exercise their power consistently with their fiduciary obligation to their paticular governmental unit and to the people in general. This presumption is applicable to all Federal, State, county and municipal officers of high or low rank and to the official duties and acts of public boards and commissions. (See 21 NY Jur, Evidence, § 108.)
LIMIT OF JUDICIAL REVIEW
The New York Court of Appeals has recognized that in a judicial review of board actions as to variances or special exceptions, the courts do not make new or substitute judgments but restrict themselves to ascertaining whether there has been illegality, arbitrariness or an abuse of discretion. (Matter of Lemir Realty Corp. v Larkin, 11 NY2d 20; Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309.)
The determination of responsible local officials in the affected community will be sustained if it has a rational basis and is supported by substantial evidence. (Matter of Cowan v Kern, 41 NY2d 591, 599.)
FULL RECORD ISSUE
Petitioners have raised the question as to whether there was a full record before the U.D.C. and also the City of Syracuse Planning Commission on which their determinations could be made. The respondent, U.D.C., has submitted and certified a list of documents as the transcript of the record of the proceedings relating to the determinations of U.D.C. They are numbered 1 through 17 in the certification and index, and each of these 17 documents are set forth in the returns numbered in accordance with the index, with the exception of *804 the stadium project plans and drawings, item No. 4, which were physically produced before the court on the return date of this motion. It further appears that an extensive record was presented to the City Planning Commission including architectural drawings of the proposed project, including floor plans, elevations, loading facilities, points of access and approaches for emergency vehicles, utility services and drainage system and development schedules and sequence materials. In addition a number of documents were also produced for the court relating to the proposed domed stadium project.
CONCLUSION
After reviewing the petitions, the answers and returns, the exhibits submitted by the parties, the briefs of the respondents Syracuse University and New York State Urban Development Corporation, Onondaga County Planning Board, the City of Syracuse Planning Commission, the answering brief of the petitioners and the reply brief of the respondents, as well as the affidavits of Chancellor Melvin A. Eggers of Syracuse University in opposition to the motions and that of Edward Norman Pedersen, a licensed architect of the State of New York, in support of the petitions, and after reviewing the facts and the applicable law, the court finds that the determinations of the public bodies under consideration were not made in violation of lawful procedures, were not effected by an error of law and were not arbitrary or capricious or an abuse of discretion.
The U.D.C. and the City of Syracuse Planning Commission had a rational basis for their respective determinations, and the court finds that the petitioners have failed to sustain the burden of proof placed upon them by law to set aside the determinations of these public bodies. Therefore, the petitions are dismissed.